IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LONA MAE HOFFACKER, | ) | Case No. 1:23-cv-01010 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

## I.    Introduction

Plaintiff, Lona Hoffacker, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for supplemental security income ("SSI") under title XVI of the Social Security Act.  Hoffacker challenges the Administrative Law Judge's ("ALJ") negative findings, arguing that the ALJ improperly applied *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), to adopt the prior ALJ's residual functional capacity ("RFC").  The parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

Because the ALJ applied the proper standard of review to determine Hoffacker's RFC in connection with Hoffacker's current application for SSI benefits – despite her failure to reference current Sixth Circuit caselaw – and because any error did not prejudice Hoffacker, the ALJ's decision must be AFFIRMED.

## II. Background

As relevant to her instant appeal, Hoffacker previously applied for SSI benefits in October 2016, alleging that she became disabled on March 1, 2009.[1]  (Tr. 129).  The Social Security Administration denied Hoffacker's application initially and upon reconsideration.  ALJ Susan Giuffre (the "prior ALJ") analyzed whether it was proper to reopen Hoffacker's prior applications, as requested by counsel in connection with her 2016 application.  (Tr. 130).  The prior ALJ found that it was not proper to reopen Hoffacker's previously denied applications because those applications were not timely reopened and good cause to reopen at that time was not shown.  (Tr. 130).  Thus, the prior ALJ considered only the medical evidence applicable to that adjudicating period, which included from the Hoffacker's protective filing date of October 30, 2016 through the date of the prior ALJ's decision.  (Tr. 131).  The prior ALJ held a hearing on August 15, 2017 and denied Hoffacker's application in an August 13, 2019 decision.  In doing so, the prior ALJ determined that Hoffacker had the RFC to perform work at the light exertional level, except that Hoffacker:

> is capable of sustaining concentration and persistence to complete short cycle simple and multiple step tasks where fast pace is not required; she is able to maintain attention, make simple decisions, and adequately adhere to a schedule; she retains the capacity to occasionally interact with others in a superficial manner; she retains the capacity to adapt to changes and demands of a routine, predicable setting; and she retains the capacity to handle[] stress and pressure in the workplace adequate to complete tasks without strict time limitations or production standards.

(Tr. 140–141).

---

[1]  Hoffacker previously applied for SSI benefits, each time alleging similar conditions.  The prior ALJ detailed in her August 2019 decision that Hoffacker had previously filed applications for Social Security benefits, which were denied and not successfully appealed, in 2009, 2012, and 2015.  (Tr. 129–131).

On May 4, 2020, Hoffacker reapplied for SSI.  Hoffacker's May 2020 application alleged that she became disabled on January 1, 2009.  (Tr. 11).  Her application was denied initially and upon reconsideration.  (Tr. 11).  ALJ Penny Loucas initially attempted to conduct a hearing on July 19, 2021, at which Hoffacker appeared *pro se*.  (Tr. 111).  The ALJ determined that the record did not contain complete medical records sufficient to conduct the hearing at that time, so she ordered that a second hearing be held once additional documents were submitted.  (Tr. 111).  The ALJ held a second hearing on December 15, 2021, once the additional medical evidence was received, and issued a decision that denied Hoffacker's application on December 30, 2021.  (Tr. 92).  The ALJ decision indicated that the ALJ was "fully persuaded" by the state agency consultants' adoption of the prior ALJ's 2019 physical RFC.  (Tr. 22).  The ALJ was "not persuaded" by the state agency consultant's adoption of the prior mental RFC, and she reworded to clarify Hoffacker's nonexertional mental limitations.  (Tr. 23).  As reworded for clarification, the ALJ determined that Hoffacker had the RFC to perform work at the light exertional level, with the following non-exertional mental limitations:

> Limited to short-cycle simple instructions and where fast pace is not required[;] . . . precluded from strict production quotas for time or quantity[;] . . . able to maintain attention, make simple decisions, and adequately adhere to schedule [;] . . . capacity to occasionally interact with others in a superficial manner, which is defined as work-related tasks, such as asking questions, clarifying instructions, gathering information, serving others, pointing or directing where items may be placed[;] . . . capacity to adapt to changes and demands of routine predictable setting and the capacity to handle stress and pressure in the workplace adequately that does not require strict time limits or production standards.

(Tr. 21).  The ALJ's clarifying language, which differed from the prior ALJ's 2019 RFC, included only a definition explaining what it meant for Hoffacker to be limited to occasional

interaction with others in a superficial manner and that she was "precluded from strict production quotas for time or quantity."  (Tr. 21).

On March 27, 2023, the Appeals Counsel declined further review, rendering the ALJ's decision the final decision of the Commissioner.  On May 18, 2023, Hoffacker filed a complaint to obtain judicial review.

### III.     Evidence

#### A.     Personal, Educational, and Vocational Evidence

Hoffacker was born on April 30, 1970, she was 38 on the alleged onset date and 51 at the time of the ALJ's December 2021 decision.  (Tr. 167).  The ALJ determined that Hoffacker has a limited education.  (Tr. 24).

#### B.     Relevant Medical Evidence

##### 1.     Physical Health-Related

An MRI of Hoffacker's thoracic spine on April 23, 2018, resulted in a diagnosis of "mild to moderate narrowing of the right T3/T4 neural foramen from facet arthrosis[.]"  (Tr. 816).

An MRI of Hoffacker's upper abdomen on May 23, 2018, ruled out any IVC thrombosis in the consideration of her described gastrointestinal pain and discomfort.  (Tr. 816).

An MRI of Hoffacker's lumbar spine on December 31, 2018, resulted in a diagnosis of "mild degenerative changes at L4-L5 and L5-S1, with facet arthropathy on the right at L5-S1, resulting in mild to moderate right neural foraminal narrowing.  [She had] no high-grade canal stenosis[.]"  (Tr. 18 (citing Tr. 816) (brackets in ALJ decision)).

The ALJ noted that from July through December 2019, records from Signature Health indicated that Hoffacker's body mass index (BMI) was around 49 kg/m2, which was generally consistent with or slightly higher than the other medical records.  (Tr. 19 (citing Tr. 542)).

4

On August 20, 2020, based on the results of a musculoskeletal ultrasound of Hoffacker's left hand and wrist for both staging and diagnostic purposes, Dr. Mandel opined that her "skin and subcutaneous tissue are normal.  There is slight joint space narrowing throughout the carpal bones.  No erosive change is noted.  No effusion is present."  (Tr. 503).  Additionally, Dr. Mandel expressed, in the same report, that Hoffacker's "extensor tendons are noted and are normal.  Comment: These musculoskeletal ultrasound findings are consistent with inflammatory-type arthritis.  There are also findings of fibromyalgia and degenerative arthritis."  (Tr. 503).

Also in August 2020, Dr. Mandel noted that Hoffacker was unable to tolerate prescribed Gabapentin, Hydroxychloroquine (Plaquenil), and Leflunomide, thus the treatment plan indicated that he discussed adjustments to Hoffacker's dosages and started her on a "low dose of sulfasalazine as remittive therapy."  (Tr. 571–572).  Additionally, Dr. Mandel noted that she was experiencing "widespread diffuse muscle and joint pain" and his treatment plan indicated a recommendation that she focus on nutrition and exercise habits.  (Tr. 571–572).

On January 4, 2021, Hoffacker reported "some improvement in the pain, stiffness, and soreness in her hands and wrists."  (Tr. 567).  She further stated that she could now "easily raise her arms above her head in the morning.  She reports no pain or swelling around the superficial temporal arteries.  Her chest examination, she says, is good.  She does not describe any exertional shortness of breath.  She states that forward bending of her low back is limited.  She reports some tenderness in her feet and ankles."  (Tr. 567).  Dr. Mandel also referred her to neurologist Preetha Muthusamy, M.D.  (Tr. 567–68).

An MRI of Hoffacker's brain on March 8, 2021, resulted in a diagnosis of "minimal microvascular ischemic change.  Otherwise, normal examination of the brain without and with contrast[.]"  (Tr. 816).

On July 14, 2021, Matthew DePaul, APRN, one of Hoffacker's pain management clinicians, noted in her physical exam that Hoffacker had normal gait, no weakness, no sensory deficits, and that her reflexes were normal.[2]  (Tr. 817–818).

### 2.  Mental Health-Related

At appointments in August 2020 and January 2021, Hoffacker reported memory issues to her rheumatologist Dr. Mandel.  (*See* Tr. 501–502; 567).

At or around March 2019, Hoffacker began therapy with Anna Whitmer, N.P.  (*E.g.*, Tr. 448–491 (treatment notes from March 2019 through June 2020)).  Over the course of her treatment during 2019 and 2020, Ms. Whitmer diagnosed Hoffacker with several conditions including major depressive disorder, generalized anxiety, PTSD, and substance use disorders; however, treatment notes indicate that Hoffacker's memory was intact.  (*E.g.*, Tr. 488–490).

Hoffacker participated in outpatient therapy treatments with Ms. Whitmer through March 2021.  (*E.g.*, 507–559).

On January 4, 2021, Hoffacker sought treatment from Ms. Whitmer for noted "worsening depression and anxiety."  (Tr. 545).  Based on her assessment, Ms. Whitmer suggested that Hoffacker change from Wellbutrin XL to Wellbutrin SR.  (Tr. 545).

On February 1, 2021, Ms. Whitmer noted that Hoffacker had been "really depressed" and experienced "increased trouble sleeping" even with taking a second dose of Wellbutrin around

---

[2] The ALJ stated: "By July 14, 2021, the claimant was exhibiting 'very good strength, normal sensation, normal unaided, gait, and overall improvement in her well-being.'"  (Tr. 19) (citing Exh. C9F, pp. 8–9)). On review of the medical records for this date, the court has been unable to locate the quoted language. And, in addition to the cited description, it appears that the "Review of Systems" portion of treatment notes from July 14, 2021, also, and contrarily, indicated that Hoffacker's musculoskeletal examination was, "[p]ositive for arthralgias, back pain, gait problem, myalgias and neck pain."  (Tr. 817).  Although the ALJ did not cite this note, she is not required to cite all evidence considered, *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) ("[W]e do not require an ALJ to discuss every piece of evidence in the record to substantiate the ALJ's decision."), and she has averred that she considered the entire record to make her findings.  (*E.g.*, Tr. 14).

8:00pm.  (Tr. 551).  Ms. Witmer proposed that Hoffacker take a second dose of Wellbutrin earlier in the day, such as 2:00 or 3:00pm.  (Tr. 551).  Additionally, Hoffacker stated that "things are good at home" and that she was "staying healthy for the most part."  (Tr. 551).

On March 1, 2021, Hoffacker reported to Ms. Whitmer that her mood was "all right, about the same" and that she complied with Ms. Witmer's advice to take a dose of Wellbutrin in the afternoon to help with her sleep.  Hoffacker stated that, after following Ms. Whitmer's advice, her sleep has been "good, getting around 8 hours."  (Tr. 558).

### C.    Opinion Evidence

#### 1.    State Agency Consultants

In July 2020, the state agency medical consultant considering Hoffacker's physical RFC, Dr. Leon Hughes, provided an RFC that "is an adoption of the PRTF findings form the ALJ/AC decision dated 8/13/2019 based on AR 98-4."  (Tr. 172).  In November 2020, upon reconsideration, Dr. Leslie Green, "affirmed as written" the RFC provided in the 8/13/2019 decision for the same reasoning.  (Tr. 180).

Additionally, in July 2020, the state agency medical consultant considering Hoffacker's mental RFC, Mary Hill, Ph.D., adopted the "findings from the ALJ/AC decision dated 8/13/2019 based on AR 98-4."  (Tr. 172).  In November 2020, upon reconsideration, Paul Tangeman, Ph.D., "affirmed as written" the RFC provided in the 8/13/2019 decision for the same reasoning. (Tr. 181).

The July 2020 report of the state agency consultants and disability examiner indicates that the applicable Acquiescence Rulings ("AR") are AR 98-4(6), related to *Drummond v. Commissioner of Social Security*, and AR 98-3(6), related to *Dennard v. Secretary of Health and*

*Human Services*.  (Tr. 172).  The November 2020 state agency report on reconsideration indicated that the same ARs applied.  (Tr. 181).

### 2.      SSA Forms and Function Reports

Hoffacker's Disability Report (form SSA-3368), submitted in May 2020, stated that she stopped working "because of other reasons" in 2006, those "other reasons" being "personal issues in dating relationship."  (Tr. 265).  She also stated that, even though she stopped working for "other reasons," she believed that her conditions became severe enough to keep her from working in January 2009.  (Tr. 265).

Hoffacker's July 2020 Function Report described that as a result of her condition she was unable to "work, be active, be social, etc."  (Tr. 273).  Additionally, she stated that her illnesses, injuries, and conditions limited her ability to work by causing panic attacks without warning in addition to preventing her from sitting or standing for any length of time.  (Tr. 272).  She further described that her days consisted of getting up, finding something to eat, sitting as long as she can, lying down for a while, and sleeping periodically.  (Tr. 273).  Hoffacker explained that she mostly kept to herself and that her children did all household or chore work such as taking care of her home; and that she had difficulty remembering to wash her hair or change clothes.  (Tr. 275–277).  However, she was able to drive for short trips such as to get food.  (Tr. 277).

### 3.      Informal Requests for Reconsideration from Tammy Erdel – Hoffacker's Sister

In August 2020, Hoffacker's sister, Tammy Erdel, submitted a statement in support of Hoffacker's disability application in which she described that Hoffacker has "panic attack[s] all the time" and was depressed.  (Tr. 281).  She is also "in pain all the time" and has "bruises on her back all the time from the back spasms she has."  (Tr. 281).  Erdel opined that "I don't believe she could hold down a job, the shape she is in."  (Tr. 281).

In September 2020, Erdel submitted a second statement in support of Hoffacker's application for SSI in which she described that Hoffacker is experiencing "posttraumatic stress disorder, major depressive disorder generalized anxiety disorder." (Tr. 282). She further explained that Hoffacker was seeking treatment with Dr. Mandel based on her diagnosis of "Fibromyalgia, seronegative inflammatory arthritis, Multiple joint involvement, Painful Rheumatism." (Tr. 282). She opined that Hoffacker "could not hold a job, she has a hard time everyday with pain some days she can hardly walk" and she again described the bruises on Hoffacker's back due to spasms. (Tr. 282).

### 4. Long-Time Friend Letter

In March 2021, a "longtime friend" of Hoffacker's submitted a letter in support of Hoffacker's SSI application. The letter was anonymous, but it described Hoffacker's physical and mental condition and concluded that the author "honestly believe[s] that [Hoffacker] is not capable of functioning in an occupational setting of any kind, and needs any/all assistance she can receive." (Tr. 305).

### D. Relevant Testimonial Evidence

### 1. Hoffacker

Hoffacker participated in a telephone hearing on July 19, 2021. (Tr. 111–125). However, the ALJ did not complete the hearing on that date because the medical record was incomplete. (Tr. 121). After the medical records were obtained, a second hearing was successfully held on December 15, 2021. (Tr. 92–105). Hoffacker waived her right to counsel, as she did at the first hearing. (Tr. 94–96). Hoffacker indicated that she was in receipt of the additional medical records on August 19, 2021. (Tr. 96). Hoffacker testified that her sister reviewed the documents because she did not "understand everything that it was saying" since she

9

"can't read and write real good."  (Tr. 96).  She indicated that with the inclusion of these records,

the ALJ had records of "everything that I have that's gone on with me."  (Tr. 97).

Hoffacker testified that she believed she should be found disabled because she

experienced anxiety, panic attacks, and depression along with fibromyalgia and rheumatoid

arthritis and back spasms.  (Tr. 98).  Additionally, she stated that she was "living in pain every

day."  (Tr. 98).  Hoffacker explained that a pain management clinician prescribed medication and

that she now wore a TENS unit, but that it was not working for her.  (Tr. 98).  She clarified that

she had been wearing the TENS unit for nearly a year and that it helped in the beginning, " a

little bit, especially when I [had] back spasms."  (Tr. 98).  Hoffacker also stated that her back

spasms could be so severe at times that they caused bruises, which she had shown her

rheumatologist and pain management clinician.  (Tr. 98–99).  Additionally, she stated that her

feet had started to go numb and that her hands tingled.  (Tr. 99).  Hoffacker explained that her

pain management provider told her this could be a result of her arthritis and fibromyalgia.  (Tr.

99).

Hoffacker further testified that her pain management clinician assessed her pain levels by

asking how much pain she was in during appointments.  (Tr. 100).  She also stated that her pain

management clinician suggested she participate in aqua therapy; however, she was not able to

complete aqua therapy because her "medical card wouldn't cover it."  (Tr. 100).

Hoffacker also explained that, at her most recent appointment, her rheumatologist "said

[her] arthritis was even getting worse[]" and that he gave her a shot in her left hip to help with

her nerve pain.  (Tr. 100).  The ALJ read from various treatment notes from her rheumatologist,

Dr. Mandel, and Hoffacker confirmed that his notations were accurate descriptions of her

condition.  (Tr. 101–102).  The ALJ also questioned Hoffacker regarding the identity of certain

10

medical providers and the type of assessments they did.  (Tr. 102–103).  Hoffacker then stated

that Dr. Mandel performed an MRI and concluded that she did not have a brain tumor and that

Dr. DePaul was her pain management specialist.  (Tr. 102).  The ALJ summarized Hoffacker's

recent treatment records and pointed out that Dr. Mandel's notes appeared to show Hoffacker's

arthritis had not worsened in the way Hoffacker had described.  Hoffacker responded that Dr.

Mandel had told her that it had.  (Tr. 104).

     Toward the end of her testimony, Hoffacker explained that "[t]here's no way I could go

to work right now, anyways, what's happening with my anxiety and panic attacks and always

being in pain."  (Tr. 104–105).  The ALJ's final question was whether Hoffacker could drive, to

which Hoffacker stated, "sometimes I do" and stated she still has a valid driver's license.  (Tr.

105).

### 2.    Vocational Expert

     Vocational expert, Rebecca Kendrick, ("VE") appeared to testify and was informed that a

a determination had been made at the first attempted hearing that Hoffacker had past relevant

work as a child monitor.  (Tr. 97).   The ALJ described the following hypothetical individual for

VE's analysis:

> [A]n individual who can engage in only light work, meaning lifting
> and carrying up to 10 pounds frequently and 20 pounds
> occasionally.  This individual also can understand, remember and
> carry out . . . short-cycle/simple instructions where fast pace is not
> required and . . . no strict production quotas for time or quantity.
> The individual is also able to maintain attention, make simple
> decisions, adequately adhere to a schedule and retains the capacity
> to occasionally interact with others in a superficial manner defined
> as work-related tasks such as asking questions, clarifying
> instructions, gathering information, serving others, pointing or
> directing where items may be placed.  . . . This individual would
> retain also the capacity to adapt to changes and the demands of a
> routine/predicable setting and the capacity to handle stress and

11

> pressure in the workplace adequately to complete tasks without
> strict time limits or production standards.

(Tr. 105–106).  The VE testified that "[t]here would be no past work within the hypothetical."

However, VE was able to list other jobs available in the national economy, such as merchandise

marker; cleaner, housekeeping; and office helper that the hypothetical person could perform at

the light exertional level.  (Tr. 105–106).

## IV.    Law and Analysis

### A.    Standard of Review

The court's review of the Commissioner's final decision denying disability benefits is

limited to deciding "whether the ALJ applied the correct legal standards and whether the findings

of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

399, 405 (6th Cir. 2009).  Substantial evidence exists "if a reasonable mind might accept the

relevant evidence as adequate to support a conclusion," *id*. at 406 (internal quotation marks

omitted), even if a preponderance of the evidence might support the opposite conclusion.

*O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020).  Under the substantial

evidence standard, the court cannot decide the facts anew, evaluate credibility, or reweigh the

evidence.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  If the ALJ's

decision is supported by substantial evidence and reasonably drawn from the record, the ALJ's

findings are conclusive, even if this court might reach a different conclusion or if the evidence

could have supported a different conclusion.  42 U.S.C.S. §§ 405(g), 1383(c)(3); *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) ("This court's review of the

Commissioner's decision is limited to determining whether it is supported by substantial

evidence and was made pursuant to proper legal standards.") (Citation omitted).  Accordingly,

the ALJ enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

However, the ALJ's decision will not be upheld if the ALJ failed to apply proper legal standards and the legal error prejudiced the claimant. *Rabbers v. Comm's SSA*, 582 F.3d 647, 654 (6th Cir. 2009); *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 439 (6th Cir. 2011) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimants on the merits or deprives the claimant of a substantial right.") (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Nor will the court uphold a decision if the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotation marks omitted).

## B.   Effect of Prior ALJ Decision

When a Social Security appeal involves a current interpretation of prior SSA determinations regarding the same claimant, both the ALJ and the court must assess the effect to be given to the prior determinations. In *Drummond*, the Sixth Circuit held that, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond v. Comm'r*, 126 F.3d 837, 842 (6th Cir. 1997). This was, in effect, a *res judicata* ruling. In AR 98-4(6), the SSA explained how the *Drummond* holding is to be applied to claims arising within the Sixth Circuit:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a findings from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law,

regulations or rulings affecting the finding or the method of arriving at the finding.

AR 98-4(6).

After *Drummond*, the Sixth Circuit clarified the application of *res judicata* in the context of subsequent appeals of denied Social Security claims.  Specifically, the court held that the *res judicata* principles articulated in *Drummond* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings."  *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018).  *Earley* explained that the principles of *res judicata* are just that – principles – and that the subsequent administrative law judge "honors those principles by considering what an earlier judge found[,]" such that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application."  *Id.* at 933.  This non-binding consideration of a prior ruling gives effect to notions of "finality, efficiency, and the consistent treatment of like cases" with a claimant's right to "bring a second application" where she may choose to introduce any amount of evidence, or none at all, "after a failed application."  *Id.*

Although *Earley* represented an updated statement of how *res judicata* under *Drummond* should be applied, an ALJ's citation to *Drummond* rather than *Earley* may be harmless error when: (1) the new RFC finding is more favorable than the prior one; (2) the new RFC finding is "substantially the same as the prior one in light of the definitions in the Social Security Rulings and other sources" despite appearing less favorable; or (3) "the jobs relied upon by the current ALJ in support of [her] finding of no disability do not require additional capacity."  *Arendt v.*

14

*Commissioner of Soc. Sec.,* 1:18-cv-484, 2019 U.S. Dist. LEXIS 35973 (N.D. Ohio Mar. 6, 2019).

When an ALJ makes an RFC determination for a new period of disability, the ALJ must review the new evidence "in the context of the entire record." *Civitarese v. Commissioner of Soc. Sec.*, No. 1:19-cv-2015, 2020 U.S. Dist. LEXIS 135160, at *47 (N.D. Ohio 2020) (citing *Earley*, 893 F.3d at 933–34).  Remand will be required if an ALJ fails to consider new evidence that is likely dispositive of a disability and a different outcome could result.  *McClellan v. Astrue*, 804 F. Supp. 678, 683 (E.D. Tenn. 2011).

### C.    Step Four: The ALJ's RFC Determination Was Not An Error Simply Because Of Citation To *Drummond*

Hoffacker's sole argument is that the ALJ erred by allegedly applying the *res judicata* standard articulated in *Drummond* as a basis for adopting the prior ALJ's RFC determination, despite new medical evidence and a new period of disability.  Hoffacker specifically argues that the ALJ's decision was improper because the ALJ found that she was "bound" to the prior ALJ's finding, under *Drummond*, upon a finding that there were no changed circumstances. ECF Doc. 10 at 10.[3]  Hoffacker claims reversible error because the current ALJ "cite[d] *Drummond* for the very principle that *Earley* rejected[.]"  ECF Doc. 10 at 10.  The Commissioner disagrees, arguing that the "ALJ satisfie[d] the principles set forth in *Earley* by

---

[3] It should be noted that, although the ALJ cited the *Drummond* standard and explained that *Drummond* held that "the previous administrative law judge's findings as to residual functional capacity were binding on the Social Security Administration in subsequent claims" (Tr. 11), the ALJ did not specifically state that she believed she was "bound" to adopt the prior ALJ's RFC determination.  (ECF Doc. 10 at 3).  The ALJ did however state that she made her decision "pursuant to the principles of res judicata with respect to subsequent applications[.]"  (Tr. 12).  This statement standing alone does not create a reversible error because even under *Earley* principles of *res judicata* must still be considered when an ALJ reviews a subsequent application.  *Earley*, 893 F.3d at 933 (explaining that prior RFC findings, under principles of *res judicata*, "are a legitimate, albeit not binding, consideration in reviewing a second application").

not adopting the prior findings in a mechanical fashion," even though the "decision did not accurately characterize [the ALJ's] obligations under AR 98-4(6)."  ECF Doc. 12 at 5.

As the undersigned has previously ruled, remand might not be warranted simply because an ALJ cited *Drummond* in support or their findings or failed to cite *Earley*.  *See e.g.*, *Miner v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 121170, at *34 (N.D. Ohio Jul. 11, 2023) ("Lack of a citation to *Earley* is not, on its own, enough to constitute a failure to apply proper legal standards.").  Instead, the court must determine "whether the ALJ applied proper legal standards, not whether the ALJ provided proper legal citations."  *Civitarese*, 2020 U.S. Dist. LEXIS 135160, at *43.  In *Civitarese*, though the ALJ incorrectly cited *Drummond*, the ALJ's decision was upheld because the ALJ applied the correct legal standard by considering "the prior ALJ determination as evidence occupying persuasive space in the context of the entire record" as *Earley* directed.  2020 U.S. Dist. LEXIS 135160 at * 44.

If the ALJ properly considered the new evidence submitted with Hoffacker's current disability application, i.e., gave her application a "fresh look," then the ALJ will have complied with the approach the Sixth Circuit articulated in *Earley*, whether or not the ALJ cited that case. *Earley* does not prevent adoption of a prior RFC when a subsequent ALJ is persuaded that the prior RFC is still the correct finding, despite the content of new medical evidence.  *Earley*, 893 F.3d at 933.  And under both *Drummond* and *Earley*, a subsequent ALJ is required to determine whether the new evidence relating to the previously unadjudicated period represents a change in the claimant's medical circumstances as compared to the prior adjudicated period.  "An individual may file a second application – for a new period of time – for all manner of reasons and obtain independent review of it *so long as the claimant presents evidence of a change in condition*."  *Id.* at 932 (emphasis added).  As explained below, this is precisely what the ALJ did.

16

Thus, the fact the ALJ cited *Drummond* rather than *Earley*, is not sufficient, standing alone, to require remand.

Although Hoffacker's merits brief had not argued that the ALJ failed to consider a specific portion of the new medical evidence, the undersigned has identified that fibromyalgia was a new condition listed in her current application. (Tr. 167). The court refers to the ALJ's consideration and discussion of the evidence relating to Hoffacker's fibromyalgia condition to demonstrate that the ALJ "gave a fresh look" at the entire medical record, despite her somewhat clumsy references to the binding effect of *Drummond*. In fact, in so doing the ALJ found fibromyalgia to be one of Hoffacker's severe impairments, Tr. 14, a condition that was not present in the prior adjudication. And the ALJ provided a healthy discussion of the condition. Tr. 16–17. The medical record shows that Hoffacker was diagnosed with fibromyalgia on January 24, 2020, according to the "PROB LIST" from her physician Dr. Choi. (Tr. 812). Her pain management provider noted that fibromyalgia was her primary diagnosis in his July 2021 treatment notes and noted that she "seems to be most bothered by her persistent widespread pain complaints consistent with her diagnosis of fibromyalgia." (Tr. 814, 818). The ALJ also indicated that Hoffacker's rheumatologist, Dr. Mandel, noted fibromyalgia when he described the nature of her physical impairments in August 2020. (Tr. 15).

Hoffacker's disability determination filings in July and November 2020 listed the diagnosis of fibromyalgia; nevertheless, the state agency consultants wholly adopted the prior ALJ's physical RFC "based on AR 98-4." (*See e.g.*, Tr. 170). After considering the totality of medical evidence, which would include Hoffacker's fibromyalgia diagnosis, the ALJ articulated she was "persuaded fully by the State Agency medical consultants' adoption of the previous [ALJ's] residual functional capacity assessment with respect to the longitudinal effects of the

claimant's severe physical impairments *because the new evidence from Dr. Mandel and others do not result in any material change* in her physical functional capacity during this subsequently-adjudicated period of disability."  (Tr. 22)(emphasis added).  This explanation shows that the ALJ considered the new evidence of Hoffacker's physical conditions, as required under *Earley*, but she adopted the prior physical RFC based on her finding that the new evidence did not change what Hoffacker was capable of doing.  So, even though Hoffacker had a new medical condition, her physical functional capacity had not changed.

The findings on Hoffacker's claims at the initial and reconsideration steps in July and November 2020 also wholly adopted the prior ALJ's mental RFC "based on AR 98-4."  (*See e.g.*, Tr. 180).  Although ALJ Loucas also found that Hoffacker's mental impairments remained non-disabling, she was not persuaded by the state agency psychological consultants' adoption of the prior ALJ's mental RFC.  (Tr. 23).  Rather, the ALJ found that Hoffacker's mental limitations in the RFC needed to be reworded to ensure that the VE "clearly understood the mental residual parameters of the claimant's functional capacity for the current adjudicating period."  (Tr. 23).  This explanation is further evidence that the ALJ considered the new evidence relating to Hoffacker's mental conditions, as required under *Earley*, prior to adopting the prior physical RFC.

Hoffacker has not clearly argued that the state agency consultants erred by adopting the prior RFC based on AR 98-4 – which explains how *Drummond* should be applied under the regulations – or that this error (assuming it was) would be imputed on the ALJ.  Nor has Hoffacker argued that the ALJ failed to consider Hoffacker's new evidence of fibromyalgia.  Even if she had, the ALJ's opinion, although imperfectly written, would belie these arguments.  The ALJ's decision indicates that she considered "the totality of the evidence" in making her

RFC determination – even though she essentially adopted the prior RFC.  (Tr. 23).  Thus, Hoffacker has not demonstrated that what the ALJ actually did, as opposed to what she cited, was error.

Hoffacker compares her case to *DiLauro v. Comm'r*, Case No. 5:19-cv-2691, 2021 U.S. Dist. LEXIS 59034 (N.D. Ohio Mar. 29, 2021); but that decision is distinguishable.  Importantly, the ALJ in *DiLauro* specifically stated that "absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  *DiLauro*, 2021 U.S. Dist. LEXIS 59034 at * 7 (citing ALJ's decision which relied on *Drummond*).  *DiLauro* is similar in certain respects.  For example, the ALJ in *DiLauro* and the ALJ here both gave weight to the state agency medical consultants.  But *DiLauro* was fundamentally different from Hoffacker's case.  There, the ALJ there not only cited *Drummond* but also failed to discuss significant medical developments between DiLauro's two applications.  *DiLauro*, 2021 U.S. Dist. LEIS 59034 at *8.  In contrast, ALJ Loucas specifically considered Hoffacker's new medical evidence and gave a fresh look at the entire record before in making her findings, as required by *Earley*, even though she cited *Drummond*.

Importantly, as the Commissioner argues, it is permissible for a subsequent ALJ to afford persuasive weight to a prior decision.  (ECF Doc.  12 at 4–5); *Earley*, 893 F.3d at 933 (explaining that the prior ALJ's findings may be considered a "legitimate, albeit not binding, consideration in reviewing a second application").  Based on her use of words such as "persuaded," it appears that this is what ALJ Loucas did.  (*See e.g.*, Tr. 22, indicating that new medical evidence from Dr. Mandel was considered but indicating that "[t]he undersigned is *persuaded* fully by the State Agency medical consultant's adoption of the previous [ALJ's RFC] assessment . . . because the new evidence . . . does not result in any material change in her

physical functional capacity during this subsequently-adjudicated period of disability.")
(emphasis added, citing *Drummond* for support)).

The ALJ's analysis, though improperly framed as having been decided under *Drummond*,
was based on a new analysis of the totality of medical evidence applicable to this adjudicating
period.  (*See* Tr. 23).  Accordingly, Hoffacker has not shown that remand is required and the
ALJ's decision must be AFFIRMED.

> **D.      Harmless Error**

Even if it was legal error for the ALJ to cite *Drummond*, that error was harmless.  The
court shares Hoffacker's concern regarding the ALJ's apparent reliance upon an out of date legal
standard and acknowledges that the ALJ's analysis could be read to apply a hybrid of the
*Drummond* and *Earley* standards.  Nevertheless, the ALJ's analysis shows that she properly
considered the new medical evidence and totality of the record before her.  (*See e.g*., Tr. 21–23).
Therefore, even if the ALJ's articulation of the applicable law was imperfect, Hoffacker was not
prejudiced, because her current application was given the review it was entitled to under *Earley*.
The absence of prejudice renders harmless any ALJ error.

The parties have not argued about the three circumstances when harmless error can be
found after a misarticulation of *Drummond*.  (*See supra* Section IV(B)).  But the Commissioner
has argued that there was substantial evidence to support the RFC, rendering any articulation
error harmless. (ECF Doc. 12 at 6–7).  And Hoffacker argued the ALJ's improper application of
*Drummond* was "very harmful," in reliance upon *DiLauro*.  (ECF Doc. 13 at 2–3).

Hoffacker has not identified any functional limitations arising from her new fibromyalgia
diagnosis that the ALJ's RFC findings failed to address; and she has not pointed to any changes
to her medical condition that the ALJ failed to consider.  Rather, Hoffacker's argument purely

challenges the ALJ's application of *Drummond*.  More specifically, and perhaps distinct from Hoffacker's case-specific contentions, Hoffacker's reply brief objects to the state medical consultant's adoption of the prior RFC's under AR 98-4 as an alleged "systems workaround" by which "every ALJ within the Sixth Circuit continues to base their decisions on the antiquated [AR] 98-4(6)."  (ECF Doc. 13 at 3).  Of course, Hoffacker has not presented evidence to support this broad contention, but even if that were true, Hoffacker has not shown that ALJ Loucas failed to consider the new medical evidence, as required under *Earley*.  Thus, Hoffacker's current claim was given the required amount of review, despite the ALJ's citation of *Drummond*.  Thus, any error by the ALJ was harmless.

## V.       Conclusion

Although the ALJ incorrectly cited *Drummond* in her decision adopting the prior RFC, that alone does not justify remand.  The ALJ's decision shows that she properly considered the new evidence and gave the evidence the "fresh look" contemplated by *Earley*.  The ALJ was permitted to afford the prior RFC persuasive weight under *Earley*.  And, to the extent that it was error for the ALJ to cite *Drummond*, that error was harmless.  Accordingly, the Commissioner's final decision is AFFIRMED and Hoffacker's claim for Social Security benefits is DENIED.

**IT IS SO ORDERED.**

Dated: February 20, 2024

Thomas M. Parker

United States Magistrate Judge